UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
*In re* Ex Parte Application of Ativos Especiais II - Fundo       :
de Investimento em Direitos Creditórios - NP and Ativos           :
Especiais III - Fundo de Investimento em Direitos                 :
Creditórios - NP,                                                 :        24-mc-119 (LJL)
                                                                  :
                                    Applicants.                   :        OPINION AND ORDER
                                                                  :
                                                                  :
------------------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:_____              │
│ DATE FILED: 09/12/2024            │
└──────────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

Intervenors Silvana Malandrini Mazza ("Malandrini Mazza"), and her two adult sons,

Francisco Malandrini Mazza ("Francisco") and Stelvio Malandrini Mazza ("Stelvio" and with

Malandrini Mazza and Francisco, "Intervenors" or the "Mazza Group") move for an order

vacating this Court's March 18, 2024, order granting an application for discovery under 28

U.S.C. § 1782. Dkt. No. 17. The Court heard oral argument on this motion on September 9,

2024. The motion is granted in part and denied in part.

## BACKGROUND

### I.    The Relationship of the Parties

Applicants Ativos Especiais II – Fundo de Investimento em Direitos Creditorios – NP

("Ativos Especiais II") and Ativos Especiais III – Fundo de Investimento em Direitos Creditorios

– NP ("Ativos Especiais III" and together with Ativos Especiais II, "Applicants") are holders of

debentures issued by HB Participacoes S.A (the "Issuer"), the parent company of Starbucks

Brasil Comercio de Cafes Ltda (the "Company"), which operates Starbucks stores in Brazil.

Dkt. No. 4 ¶¶ 8, 14, 16; Dkt. No. 19 ¶ 6. Intervenor Silvana Malandrini Mazza is party to an

Equity Commitment Letter (the "Contract") which was executed in conjunction with the issuance

of the debentures. Dkt. No. 4 ¶ 17; Dkt. No. 19 ¶ 8.

Under the Contract, Malandrini Mazza committed to make one or more capital contributions in cash to the Issuer or the Company, as relevant, upon the occurrence of certain Trigger Events. Dkt. No. 4 ¶ 17. One Trigger Event is a Failure to Pay Trigger Event, which occurs if the Issuer fails to pay any amount due to a Debenture Holder under the Indenture. *Id.* ¶ 18; Dkt. No. 19 ¶ 11. Another Trigger Event is a Net Debt to EBITDA Ratio Trigger Event, which occurs if, as of the last day of any fiscal year of the Company, the Net Debt to EBITDA Ratio of the Company is greater than 2.5:1.0. Dkt. No. 4 ¶ 19; Dkt. No. 19 ¶ 12.

Applicants claim that both of these Trigger Events have occurred. Dkt. No. 4 ¶ 20. On July 21, 2023, Applicants served notice on Malandrini Mazza that the Net Debt to EBITDA Ratio Trigger Event had occurred, giving rise to an obligation on the part of Malandrini Mazza to make an Equity Contribution to the Company in an amount that, had it consisted of cash or cash equivalents on the last day of the fiscal year, would have resulted in a Net Debt to EBITDA Ratio of equal to or less than 2.5:1.0. Dkt. No. 4 ¶¶ 21–22. When Malandrini Mazza did not do so, Applicants served a second notice on her that the Net Debt to EBITDA Ratio Trigger Event had occurred. *Id.* ¶ 24.

On October 10, 2023, the Issuer was required to make a payment to Debenture Holders in connection with the second installment of the second issuance under the Indenture, but it did not do so within two business days as required under the Indenture. *Id.* ¶ 26. On October 12, 2023, Applicants served notice on Malandrini Mazza that the Failure to Pay Trigger Event had occurred. *Id.* ¶ 27. At this time, Malandrini Mazza has not made the contributions required under the Contract upon the occurrence of the Net Debt to EBITDA Ratio Trigger Event or Failure to Pay Trigger Event. *Id.* ¶¶ 25, 28.

II.    **The Foreign Proceedings**

Applicants have initiated several proceedings in Brazil related to Malandrini Mazza's obligations under the Contract.  Dkt. No. 4 ¶ 30; Dkt. No. 19 ¶ 15.  On October 9, 2023, in the 41st Civil Court of the Central State Forum of the City of Sao Paulo in Brazil, Applicants initiated a *protesto contra alienação de bens* ("*protesto*") under Brazilian law against Malandrini Mazza, Francisco, and Stelvio.  Dkt. No. 4 ¶ 33.  A *protesto* is a proceeding brought with the purpose of disclosing to the public the existence of a legal claim against someone, putting third parties on notice that transactions with the defendant may be revoked if the defendant does not have sufficient assets to comply with the claim if it ripens into an obligation.  *Id.*; Dkt. No. 19 ¶ 17.  Applicants brought the *protesto* to help them eventually collect if they obtain a future judgment against Malandrini Mazza, Francisco, or Stelvio.  Dkt. No. 4 ¶ 34.  In the proceeding, Applicants desire to be made public that they claim: (i) that Malandrini Mazza failed to fulfill an obligation established by the Contract; and (ii) that Francisco and Stelvio are responsible for fulfilling the obligations assumed by their mother in the Contract.  Dkt. No. 19 ¶ 22.

On January 29, 2024, Applicants initiated an *execução de obrigacao de fazer* ("*execução*") proceeding in the 4th Civil Court of the Central State Forum of the City of Sao Paulo in Brazil.  Dkt. No. 4 ¶ 31.  An *execução* is a proceeding brought to compel someone to fulfill a contractual duty.  *Id.*; Dkt. No. 19 ¶ 50.  In this second proceeding, Applicants seek to compel Malandrini Mazza to make cash capital contributions due under the Contract.  Dkt. No. 4 ¶ 31.

Applicants make reference to a further Brazilian proceeding in which the documents they request may be used: an *incidente de desconsideração da personalidade jurídica* ("*incidente*"), *Id.* ¶¶ 32, 43. An *incidente de desconsideração da personalidade jurídica*, or "request for the disregard of the legal entity," is a proceeding pursuant to which parties can ask the court to

pierce the corporate veil and use the assets of one party to satisfy the liabilities of another. *Id.* ¶ 32. Applicants state that they anticipate bringing an *incidente* to compel Francisco and Stelvio to use their assets to satisfy a judgment, if they obtain one, against Malandrini Mazza in the *execução. Id.* ¶ 43.

These three proceedings are defined as the Brazilian Proceedings.

Intervenors identify a fourth proceeding, which was initiated by Applicants, a *produção antecipada de prova ("produção")*. Dkt. No. 19 ¶¶ 29-49. A *produção* is a proceeding seeking early production of evidence. *Id.* ¶ 30. In the *produção* proceeding, Applicants sought early production of evidence related to alleged asset concealment by Malandrini Mazza, Francisco, Stelvio, and a related company. Dkt. No. 19-5 ¶ 3. The alleged transactions occurred in 2007. *Id.* ¶¶ 3, 6. Specifically, Applicants sought evaluations related to properties contributed to the company by Francisco and Stelvio in 2007, a forensic accounting examination of the company, and income tax declarations of each individual since 2007. *Id.* ¶ 3.

On May 24, 2024, the Brazilian court denied Applicants' request for early production of evidence. *Id.* The court stated that there were "several grounds justifying the immediate dismissal" of the case, including lack of standing, absence of a valid reason for legal action, failure to provide a clear and specific basis for the claim, and jurisdictional incompetence. *Id.* ¶ 5. Specifically, the court found there were "significant doubts" as to whether the sons could be held liable for the mother's debts and that "considering that the transactions between the defendants took place in 2007 and [Malandrini Mazza's] investment commitment to the plaintiffs occurred in 2021, approximately fifteen years later, it seems highly improbable that the defendants' actions were aimed at concealing [Malandrini Mazza's] assets, purely based on the timeline." *Id.* ¶ 6. It added: "It's difficult to conceive how actions taken nearly two decades

before [Malandrini Mazza's] capital commitment to the plaintiffs could constitute commingling of assets or abuse towards the plaintiffs . . . because at the time of those actions, there was no contractual relationship with the plaintiffs." *Id.*[1]  The Court held that there was currently "no legal basis" for Applicants' "ill-fated attempt to retrospectively investigate the financial history of the defendant," which it characterized as a "fishing expedition." *Id.* ¶ 10.

Applicants did not seek any evidence in the *produção* beyond the evidence related to the 2007 transaction. *See id.* ¶ 3.  Applicants' Brazilian lawyer states in this proceeding that Applicants have gathered evidence of "an unlawful scheme to hide Malandrini Mazza's assets to prevent them from being attached by creditors," including evidence of "a capital contribution to a family corporate vehicle based on suspicious real estate property valuations; unjustified capital dilutions by Malandrini Mazza; and evidence that despite the dilutions, Malandrini Mazza never stopped being the controller of the family business, among others." Dkt. No. 24 ¶ 17.  It is not clear from Applicants' submission that the evidence to which they refer is anything different from the 2007 transactions referenced in the *produção*, or that "creditors" refers to Applicants themselves.  Tellingly, Applicants do not provide the date of such evidence or any details regarding the evidence.  At oral argument on Intervenors' motion, Applicants were not able to provide any additional detail.  Oral Argument Tr. 9, 13-14, 37–38.

## III.    The 1782 Request

On March 13, 2024, Applicants made an *ex parte* application for an order pursuant to 28 U.S.C. § 1782 permitting them to obtain discovery from The Clearing House Payments Company LLC (the "Clearing House") and Morgan Stanley & Co. LLC ("Morgan Stanley") for use in the Brazilian Proceedings.  Dkt. No. 1.  The time period for the records requested in this

---

[1] The Brazilian court referred to Malandrini Mazza by her first name, Silvana.

proceeding differs from the time period for the records requested in the *produção*.  Applicants sought leave to serve a subpoena on the Clearing House for copies of all wire transfers and payment messages processed through the Clearing House during the period July 8, 2021, to present involving Malandrini Mazza, Francisco, Stelvio, or various entities affiliated with Malandrini Mazza (the "Corporate Entities").  Dkt. No. 2-1 at 2–10.[2]  Applicants further sought leave to serve on Morgan Stanley a subpoena calling for account records and account statements from July 8, 2021, to present relating to the Malandrini Mazza Accounts, defined to include accounts held in the name of Malandrini Mazza, Francisco, Stelvio, or the Corporate Entities. Dkt. No. 2-1 at 11–19.  Specifically, the subpoena requested:

> 1. All account records and account statements relating to the Malandrini Mazza Accounts, such as detailed checking account information (account number, account balance, date of opening and closure of account); detailed investment account information (account number, date of opening and closure of account); custodian account information (including for cash and commodities); audited and/or unaudited financial statements; equity and/or bond certificates; trade confirmation statements; and monthly portfolio reports;
>
> 2. All transaction histories for the Malandrini Mazza Accounts; and
>
> 3. Documents sufficient to show all transfers in and out of the Malandrini Mazza Accounts, including withdrawals, deposits, transfers of money, or any activity in the Malandrini Mazza Accounts.

*Id.* at 18–19.

On March 18, 2024, the Court issued an order granting the *ex parte* application "without prejudice to a challenge to the subpoenas, including their scope, and potential reconsideration of the application of the § 1782 factors."  Dkt. No. 7.

On May 9, 2024, Intervenors filed a motion to intervene.  Dkt. No. 8.  Applicants did not oppose the motion.  Dkt. No. 13.  On May 15, 2024, the Court granted the motion to intervene.

---

[2] References to this document use ECF pagination.

Dkt. No. 14.

Intervenors filed this motion to vacate, along with a memorandum of law and a declaration on June 21, 2024. Dkt. Nos. 17–19. Applicants filed a memorandum of law in opposition to the motion to vacate and two declarations on July 22, 2024. Dkt. Nos. 23–25. On August 5, 2024, Intervenors filed a reply memorandum of law in further support of their motion to vacate, along with a declaration in support of that motion. Dkt. Nos. 26–27.

## DISCUSSION

To be entitled to relief under Section 1782, applicants "must meet several statutory requirements, including that '(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)); *see In Re BonSens.org*, 95 F.4th 75, 79 (2d Cir. 2024).[3]

"Once the statutory requirements are met, a district court may order discovery under § 1782 in its discretion, taking into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"

---

[3] Additionally, the statute requires that the discovery not be "in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); *see In re Guo*, 965 F.3d 96, 102 n.3 (2d Cir. 2020) ("While our case law has often focused on these three elements, the statute also imposes other requirements, including that the discovery not be in violation of any legally applicable privilege." (citation omitted)). Here, Intervenors have argued that the production of documents would be contrary to "the constitutional and legal protection of banking secrecy" under Brazilian law. Dkt. No. 18 at 18; *see* Dkt. No. 19 ¶ 80–85. However, they have not argued that this constitutes a "privilege" under Brazilian law or that Brazilian privilege law would be applicable to the discovery sought here. *See Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 99 (2d Cir. 2020).

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)); *see In re Pub. Joint-Stock Co. Bank Otkritie Fin. Corp.*, 2023 WL 4928227, at *2 (S.D.N.Y. Aug. 2, 2023).

The Supreme Court has set forth four factors for the Court to consider in the exercise of its discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the requested discovery is "unduly intrusive or burdensome."

*BonSens*, 95 F.4th at 80 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Intervenors argue that the subpoenas should be quashed and the order authorizing their issuance vacated because (1) the discovery sought does not satisfy the test that it must be "for use" in a foreign proceeding; and (2) the discretionary factors weigh against granting the application.

## I.    "For Use"

Intervenors argue that Applicants have not demonstrated that the requested documents are "for use" in any of the Brazilian Proceedings, either because the proceedings are not adjudicative, the documents requested are not relevant, or the planned proceedings are not within reasonable contemplation.  Dkt. Nos. 18, 26.  Applicants respond that the proceedings are adjudicative, the requested asset discovery is relevant to the merits of their *protesto* claims and enforcement of an eventual judgment in the *execução*, and the *incidente* proceeding is within reasonable contemplation.  Dkt. No. 23 at 7–11.

"The 'for use' statutory prerequisite assesses 'the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.'" *BonSens*, 95 F.4th at 80 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)). If a § 1782 applicant is not a participant in a foreign proceeding and is not in a position to have a foreign tribunal consider the requested evidence, *see Accent Delight*, 869 F.3d at 131, or if the sought-after information would be of no use in the foreign proceeding, *see Mees*, 793 F.3d at 298, there would be no need in the interests of comity for a United States court to lend its hand to an applicant to obtain evidence in the United States.

As a threshold requirement, to "serve as a proper predicate for a § 1782 petition" the proceeding for which the discovery is sought must be "adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Assuming this requirement is met, the applicant bears the burden to show that the requested discovery will "be employed with some advantage or serve some use in the proceeding." *Accent Delight*, 869 F.3d at 132 (quoting *Mees*, 793 F.3d at 298). The applicant need not have a claim for relief in the foreign proceeding, nor must the information sought be necessary to the applicant's case. *Accent Delight*, 869 F.3d at 131–133. However, the applicant must demonstrate that the information is "minimally relevant to the foreign proceeding." *BonSens*, 95 F.4th at 80. In addition, there must be a "procedural mechanism by which the [applicant] may inject the discovery it seeks." *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022).

The prospective use of the evidence need not be imminent, but it cannot be "merely speculative." *BonSens*, 95 F.4th at 80–81 (quoting *Mangouras*, 980 F.3d at 101). If there is no pending proceeding in which the evidence can be used, the applicant must "make an objective showing that the planned proceedings were within reasonable contemplation." *Certain Funds,*

9

798 F.3d at 124.  This may include laying out the legal theory supporting the planned

proceedings, the content of the planned claims, or a "sufficiently concrete" factual basis for the

claims.  *Mangouras*, 980 F.3d at 101.  However, "[m]erely retaining counsel and sketching a

vague outline of a proposed suit does not meet that requirement."  *IJK Palm*, 33 F.4th at 681.

Similarly, courts have denied applications where the applicant sought materials in order to

"investigate whether litigation is possible in the first place, putting the cart before the horse."  *In*

*re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*,

2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd*, 798 F.3d 113; *see In re China Constr.*

*Bank (Asia) Corp. Ltd*., 2023 WL 3791711, at *2 (S.D.N.Y. June 2, 2023) ("[C]ourts in this

District have rejected Section 1782 applications when the petitioner sought discovery to

determine *whether* to initiate a collection proceeding."); *Jiangsu Steamship Co. v. Success*

*Superior Ltd*., 2015 WL 3439220, at *5 (S.D.N.Y. Feb. 5, 2015).

    "If an applicant's ability to initiate a proceeding in which the requested discovery may be

used 'depends on some intervening event or decision,' the applicant must 'provide an objective

basis on which to conclude that the event will occur or the requisite decision will be favorable.'"

*BonSens*, 95 F.4th at 80–81 (quoting *IJK Palm*, 33 F.4th at 680). When an applicant must clear

"a series of procedural hurdles" in order for the discovery to be usable, and the applicant has not

provided an objective basis on which to believe it will do so, "it has not carried its burden to

show that the suit is within reasonable contemplation." *IJK Palm*, 33 F.4th at 680.  If the

applicant has not made a sufficient showing that the requested evidence would be "of use" at the

time the application is made and adjudicated, a party may file a new application once

circumstances change.  *See Mangouras*, 980 F.3d at 93; *In re MT Baltic Soul*

*Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015).[4]

On their face, the subpoenas seek discovery of extensive financial information regarding Malandrini Mazza, her two sons, and five corporate entities.  Dkt. No. 2-1 at 9–10, 14–15.  However, Applicants barely address the corporate entities in their response to the motion to quash, suggesting that they "only seek records about asset transfers by the Mazza Group," which is defined as "Malandrini Mazza and her sons."  Dkt. No. 23 at 20; *id.* at 2.  At argument, Applicants conceded that they are not seeking documents from the corporate entities beyond those that reference transactions with Malandrini Mazza or her sons.  Oral Argument Tr. 7.  Even on Applicants' account, financial information about the corporate entities other than transfers to or from Malandrini Mazza or her sons would not be "minimally relevant" to any of the Brazilian Proceedings.  *BonSens*, 95 F.4th at 80.  Therefore, the motion is granted and the subpoena to Morgan Stanley is quashed to the extent it seeks information about the corporate entities other than information about asset transfers to and from Malandrini Mazza or her sons.

---

[4] In *Certain Funds*, the Second Circuit stated that "we assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed."  298 F.3d at 124.  However, from context, it is apparent that the distinction the court was drawing was between "the facts as they were presented to the district court" and additional facts arising after the district court made its decision.  *Id.* at 124–125.  Indeed, in *Mangouras*, the Second Circuit situated its analysis at the time the § 1782 application was filed "and briefed before the district court," and appeared to place weight on the filing of applicant's foreign proceeding after his application but "prior to the district court's ruling on the application."  980 F. 3d at 100–101.  Therefore, as in virtually every other type of litigation, a district court may take account of developments in the foreign proceedings during the pendency of the application, rather than relying solely on the facts as they stood at the time of the application.

The remaining subpoena requests are for information about Malandrini Mazza, her sons, and their asset transfers. Whether this information is "for use" must be analyzed with respect to each of the three proceedings.

### A.     *Protesto*

Applicants argue that the *protesto* is not an adjudicative proceeding because it "neither adds nor diminishes rights" and "the court simply acts as a communication mediator." Dkt. No. 18 at 10 (quoting Dkt. No. 19 ¶¶ 18–19). Courts have found proceedings to be nonadjudicative when the form of the proceeding is "inconsistent with the concept of impartial adjudication." *Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980); *see In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1021 (2d Cir. 1967) (Friendly, J.) (stating that the concept of adjudication "is not so broad as to include all the plethora of administrators whose decisions affect private parties and who are not entitled to act arbitrarily, and one useful guideline is the absence of any degree of separation between the prosecutorial and adjudicative functions"). But when a proceeding involves a judge deciding contested legal or factual issues, it is generally understood to be adjudicative. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 158 (2d Cir. 2022) ("determin[ing] the merits of a contention that an arbitral award should be vacated as fraudulently obtained, a recognized judicial function in this country as well as in the United Kingdom," is adjudicative); *In re YS GM Marfin II LLC*, 2022 WL 624291, at *6 (S.D.N.Y. Mar. 2, 2022) ("[T]he contemplated proceedings . . . will not be merely 'administrative,' as they will involve a court hearing or judicial review of a TPDO application."); *China Constr. Bank*, 2023 WL 3791711, at *1 ("the debtor examination will involve judicial factfinding," and is therefore adjudicative).

In the *protesto*, Applicants seek an announcement from a court that they have claims against Malandrini Mazza and her sons. Dkt. No. 24 ¶ 15; Dkt. No. 19 ¶ 22. In this proceeding,

the court does not act administratively or in a one-sided manner by simply granting any request submitted. Rather, for the *protesto* to be granted, Applicants must show a "legitimate interest" and non-harmfulness of the request. Dkt. No. 19 ¶ 21–23; Dkt. No. 24 ¶ 16. As the documents submitted by Intervenors demonstrate, this is a legal standard which requires judicial analysis and which many requests fail to meet. Dkt. Nos. 19-1, 19-2, 19-3, 19-4. Although the judicial relief sought in a *protesto* may be weak compared to, for example, an attachment proceeding, Intervenors' own submission rebuts the claim that the court merely "acts as a communication mediator." Dkt. No. 18 at 10. Determining a party's entitlement to relief based on a legal standard is a quintessentially adjudicative task.

The requirement of "legitimate interest" also suggests that information about asset transfers between Malandrini Mazza and her sons is at least minimally relevant to the *protesto* proceeding. To support Applicants' announcement that they have claims against both Malandrini Mazza and her sons, applicants must show that they have a "legitimate interest" in holding the sons accountable for their mother's obligations. Dkt. No. 19 ¶ 21–23; Dkt. No. 24 ¶ 16. Intervenors have argued in the *protesto* that Applicants have not met their burden of proof because they have offered no evidence of collusion or unlawful acts. Dkt. No. 24 ¶ 19.[5] The *protesto* court has asked Applicants to respond to this argument. *Id.*

Documents regarding asset transfers between the mother and sons could "serve some use" on this point, because, on the assumption that they show collusion or some unlawful act, they could support Applicants' underlying alter ego theory. *BonSens*, 95 F.4th at 80.

---

[5] Although the declaration of Applicants' Brazilian counsel cites to an exhibit that purports to further support this point, it is an untranslated document in Portuguese and therefore not properly before the court. *See Heredia v. Americare, Inc.*, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020).

Intervenors dispute that they engaged in unlawful acts and argue that the sought-after records would be insufficient to meet the standard for "legitimate interest."  Dkt. No. 19 ¶ 26.  However, the "for use" standard does not require that the information be decisive or that the Applicant have "a viable cause of action."  *Accent Delight*, 869 F.3d at 131–133.  Because Applicants have been asked to justify their claim against the sons in the *protesto*, and information about asset transfers between mother and sons speaks to the viability of that claim, the information is at least minimally relevant to that proceeding.  *See Mees*, 793 F.3d at 298 (rejecting a standard that "would entail a painstaking analysis not only of the evidence already available to the applicant, but also of the amount of evidence required to prevail in the foreign proceeding").

Intervenors cast doubt on Applicants' arguments by noting that "[a]pplicants already have represented to the Brazilian court that they do not intend to submit further evidence in the *protesto* proceeding."  Dkt. No. 26 at 3–4.  This assertion is based on a letter Applicants filed with the Brazilian tribunal during the pendency of this application, which stated that "there is no need to talk about the production of additional evidence beyond that already attached . . . which is sufficient to grant the requests made" and asked the tribunal to grant its request on the basis of the paper submissions already made to that tribunal.  Dkt. No. 27-1.  However, this letter does not show that Applicants lack the "practical ability . . . to place a beneficial document—or the information it contains—before a foreign tribunal."  *BonSens*, 95 F.4th at 80.  As Applicants explained without contradiction at oral argument, the letter merely asked the court to issue a ruling in its favor without receiving evidence.  Oral Argument Tr. 4–7.  The Brazilian court already asked for evidence and Applicants did not forego or waive their right to present evidence if the court adhered to that position.  *Id.* at 5.  At oral argument, Intervenors merely stated that Applicants would need to make a special application to present evidence.  *Id.* at 24.  Such an

application would be a "procedural mechanism" to inject the discovery, and does not preclude use of the discovery in the foreign proceeding.  *IJK Palm*, 33 F.4th at 680.

Applicants' letter casts doubt on whether Applicants in fact seek the information with the intent to use it in the *protesto*, as opposed to for some other reason.  However, that doubt is relevant to the discretionary analysis, not to whether the information is "for use" as a matter of law.  *Cf. In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420, at *5 (S.D.N.Y. June 29, 2015) (denying petition for discretionary reasons when Petitioner advanced "at least a plausible theory for how the discovery sought could be used in a foreign proceeding," but the record "strongly suggest[ed]" that Petitioner in fact sought to use the discovery in an ongoing United States proceeding).

Because Applicants still have the ability to place the documents before the foreign tribunal, and the subpoenas ask for documents that fall into the category of those that would be minimally relevant to their claim, the "for use" requirement is satisfied with respect to the *protesto*.

### B.    *Execução*

Applicants state that information about Malandrini Mazza's assets and asset transfers "would help identify assets that could be used to enforce any judgment they may receive" in the *execução*.  Dkt. No. 23 at 9–10.  Intervenors argue that this information is irrelevant to adjudication of the claims and defenses in the *execução* proceeding, and that discovery aimed at enforcement should not be granted in the absence of a judgment or motion for pre-judgment attachment.  Dkt. No. 18 at 10–11; Dkt. No. at 4–5.

The Second Circuit has not decided whether a Section 1782 application can be granted merely to discover assets to satisfy a judgment.  *See In re Gorsoan Ltd. for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 843 F. App'x 352 (2d

Cir. 2021) (assuming, but not deciding, that "§ 1782 reaches discovery sought only to identify assets") (summary order).  However, the Court need not decide this question here because in any case, Applicants have not shown that the particular proceeding for which they would use the evidence is "within reasonable contemplation."  *Certain Funds*, 798 F.3d at 123.

Applicants do not contend that the asset information can "be employed with some advantage" in proving their claims in the *execução.  Accent Delight*, 869 F.3d at 132.  The *execução* seeks to hold Malandrini Mazza to her obligations under the Contract, which do not depend on the extent or location of her assets.  Information about her assets is only relevant to the enforcement of a potential judgment.

However, Applicants do not currently have an enforceable judgment for damages, nor do they have a pending pre-judgment attachment proceeding.  This distinguishes this case from many in which asset discovery was permitted, including the cases cited by Applicants.  *See In re Arida, LLC*, 2020 WL 7496355, at *4 (S.D.N.Y. Dec. 21, 2020) ("[R]elief may properly be granted to take discovery of assets in order to enforce an existing judgment, provided that the applicant has adequately identified the proceeding and demonstrated that the materials sought could be employed to some advantage in the proceeding."); *Union Fenosa Gas, S.A. v. Depository Tr. Co*., 2020 WL 2793055, at *1–4 (S.D.N.Y. May 29, 2020) (granting asset discovery in aid of attachment to enforce an arbitral award which the movant "refused to comply with . . . voluntarily" ); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 267 (S.D.N.Y. 2021) (granting asset discovery aimed at amending existing freezing orders, as well as gathering evidence to support several merits arguments); *In re Batbold*, 2021 WL 4596536, at *1–3 (S.D.N.Y. Oct. 6, 2021) (granting asset discovery in support of multiple prejudgment attachment applications already filed), *aff'd*, WL 2088524 (S.D.N.Y. Feb. 17, 2023); *In re Habib*, 2022 WL 1173364, at

*3 (S.D.N.Y. Apr. 20, 2022) (granting discovery "for use in an ongoing enforcement proceeding"). Full asset discovery of every defendant cannot be "for use" upon the filing of a complaint in a foreign tribunal simply because the plaintiff might win a judgment, which the defendant might then fail to satisfy, which the plaintiff might then enforce via asset attachment. Such use is "merely speculative." *BonSens*, 95 F.4th at 80–81.

Since there is no pending attachment or enforcement proceeding, Applicants must show that an enforcement proceeding for which the discovery would be minimally relevant is "within reasonable contemplation." *Certain Funds*, 798 F.3d at 124. Applicants have not shown this. Rather, the parties' descriptions of the progress of the *execução* suggest that there several "procedural hurdles" still to come under Brazilian law before enforcement can occur. *IJK Palm*, 33 F.4th at 680. Applicants submit that the *execução* court ordered Malandrini Mazza to make required contributions by May 25, 2024, and that Malandrini Mazza did not comply with that order. Dkt. No. 24 ¶ 5–6. Based on Malandrini Mazza's failure to perform her obligation, Applicants have sought conversion of the proceeding to an *execução por quantia certa*, essentially a proceeding for money damages rather than specific performance. Dkt. No. 24 ¶ 7. That application is pending. *Id.* ¶ 8. Intervenors state that Malandrini Mazza has sought a stay and litigated the necessity of compliance, and that conversion to an *execução por quantia certa* would require a liquidation proceeding to determine the amount of damages. Dkt. No. 27 ¶ 10–12.

If Applicants had a judgment for damages against Malandrini Mazza and Malandrini Mazza had refused to pay, an attachment proceeding might well be "within reasonable contemplation." *See Union Fenosa Gas*, 2020 WL 2793055, at *1–4. But right now, an application for discovery to be used in a post-judgment attachment proceeding is premature.

This use of the discovery "depends on . . . intervening event[s] or decision[s]," specifically the Brazilian court's decisions on the conversion to an action for damages and on the defenses raised by Malandrini Mazza. *IJK Palm*, 33 F.4th at 680. Granting asset discovery for post-judgment enforcement when the merits of the proceeding remain uncertain would allow any plaintiff to investigate the finances of any defendant based simply on the fact that he has brought a case.[6]

Applicants have also not shown that a pre-judgment attachment proceeding is "within reasonable contemplation" at this time. Applicants suggest generally in the papers accompanying their original application that they could "seek a prejudgment attachment," Dkt. No. 2 at 9, and in opposing the motion to quash they cite cases in which discovery was granted for this purpose, *see* Dkt. No. 23 at 10. However, they do not explicitly state an intent to seek a pre-judgment attachment in the *execução*, nor do they demonstrate that there is a legal mechanism for them to do so.[7] Applicants' passing statements or implications that they could seek pre-judgment attachment suggest the "*possibility* of initiating" such a claim, but do not constitute an "objective showing" that they plan to do so. *Certain Funds*, 798 F.3d at 124 (emphasis in original); *see Gorsoan*, 843 F. App'x at 354–355 (denying application when discovery was not relevant to the merits of the case, and future enforcement action was a mere "possibility") (summary order).

---

[6] Applicants argue that "it does not matter whether the *execução* proceeding will result in an order [to Malandrini Mazza] to pay," and that they can use the discovery "to identify the Mazza Group's assets, whether or not they can receive any particular form of relief." Dkt. No. 23 at 10 (internal quotation marks omitted). However, if the *execução* proceeding does not result in an order in favor of Applicants, given that Applicants only seek discovery in aid of enforcement it is not clear how Applicants will have "the practical ability to inject the requested information into [the] foreign proceeding . . . 'with some advantage.'" *Accent Delight*, 869 F.3d at 132 (quoting *Mees*, 793 F.3d at 298).

[7] Although the parties have not fully explained Brazilian law on this issue, Intervenors suggest that attachment of assets may only be possible after the proceeding is converted to an *execução por quantia certa*. *See* Dkt. No. 26 at 5; Dkt. No. 19 ¶¶ 9–11; Dkt. No. 24 ¶¶ 7–9.

Applicants have not satisfied their burden to show the requested asset discovery is "for use" in the *execução* proceeding.

    **C.**    ***Incidente***

Applicants finally argue that information about Malandrini Mazza and her sons is for use in a planned *incidente* proceeding, where it will be used to "establish that any transferees of Malandrini Mazza's assets are . . . Malandrini Mazza's alter egos." Dkt. No. 23 at 11. This proceeding has not yet been brought, and Applicants therefore bear the burden of making an objective showing that it is "within reasonable contemplation." *Certain Funds*, 798 F.3d at 124. Applicants have not done so.

Applicants state that they have "retained counsel in Brazil and announced their intent to initiate the *incidente*." Dkt. No. 23 at 12. However, these steps alone are not sufficient. *See IJK Palm*, 33 F.4th at 681. Applicants additionally state that they have a legal theory, essentially "U.S. alter-ego liability." Dkt. No. 23 at 12. This may be true, but it also is not sufficient. Any applicant may retain counsel, identify a claim, and state that it wants to pursue a defendant on that claim. However, identifying a claim a party wants to pursue is different from a proceeding on that basis being within reasonable contemplation. It is easy for a litigant to state that it would like to sue an adversary on some hypothetical claim. Section 1782 requires more. "Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place." *Certain Funds*, 2014 WL 3404955, at *6. The applicant thus must provide some basis for the court to believe that the foreign claim can or will realistically be brought on the proposed theory. *See Harbour Victoria Holdings*, 2015 WL 4040420, at *8 (holding that request was an impermissible fishing expedition where "[i]f the discovery Petitioner seeks confirms the existence of these bank accounts, it appears that

19

Petitioner will then commence confirmation proceedings. . . [and] [i]f the discovery does not confirm the existence of these bank accounts, it appears that Petitioner will not commence such proceedings.").  In other words, Applicants must show that there is a "concrete" or "objective" basis to believe that such a proceeding will be brought, rather than a subjective hope that the request will uncover the right evidence.  *Certain Funds*, 798 F.3d at 124; *see Mangouras*, 980 F.3d at 101 (proceeding for giving false testimony not within reasonable contemplation when applicant provided no basis to believe that the witnesses gave false testimony); *Jiangsu Steamship Co.*, 2015 WL 3439220, at *5 (attachment proceeding not within reasonable contemplation when applicant admitted it did not know where the target's assets were located).

Here, Applicants have shown no more than the information about asset transfers can help them decide "*whether* to initiate" an *incidente* proceeding, not that such a proceeding is currently within reasonable contemplation.  *China Constr. Bank*, 2023 WL 3791711, at *2.  Applicants state that they have "gathered evidence" supporting the *incidente*.  Dkt. No. 23 at 12.  They describe this evidence as "a capital contribution to a family corporate vehicle based on suspicious real estate property valuations, unjustified capital dilutions by Malandrini Mazza; and evidence that despite the dilutions, Malandrini Mazza never stopped being the controller of the family business," Dkt. No. 24 ¶ 17; *see also* Dkt. No. 4 ¶ 29 ("There are strong elements that indicate that the asset transfers [between Malandrini Mazza and her sons] were made without receiving equivalent value in return.").  However, this is merely a list of financial transactions described in pejorative language.  Applicants do not provide evidence of when the transactions occurred or what, if anything, made them problematic.  The Brazilian court in the *produção* suggested that evidence of such transactions from the 2007 timeframe would not support a claim that Defendants intended to conceal Malandrini Mazza's assets in the period from 2021 forward.

Dkt. No. 19-5 ¶ 6. Applicants offer no reason to believe that what they have or hope to find is any better than what the Brazilian court indicated was insufficient.

Applicants thus have not demonstrated that their alter ego claims are anything more than "speculative." *Mangouras*, 980 F.3d at 101. Applicants in fact concede that the current evidence "may not suffice for the disregard of the legal entity that could be sought in an *incidente* proceeding," and that applicants are therefore "seeking other evidence that could substantiate an *incidente* claim." Dkt. No. 24 ¶ 18. The showing is no better than that which the court found insufficient in *Harbour Victoria Holdings*. *See* 2015 WL 4040420, at *6–8. The evidence demonstrates that Applicants wish to "investigate whether litigation is possible in the first place," not that such litigation is within reasonable contemplation. *Certain Funds*, 2014 WL 3404955, at *6.

## II.    Discretionary Factors

Based on the analysis above, the financial records of Malandrini Mazza and her sons are not "for use" in the *execução* or *incidente*. However, the request could still be granted "for use" in the *protesto* on the theory that the requested records, if they show what Applicants hope they show, would be minimally relevant to the issue in that proceeding. Whether to grant discovery for this purpose depends on the Court's weighing of the discretionary factors. *See BonSens*, 95 F.4th at 80.

Intervenors argue that the discretionary factors weigh against granting the application because Applicants can seek the relevant financial information from the Brazilian courts and only seek it here in order to circumvent strict Brazilian evidentiary requirements. Dkt. No. 18 at 13–18. Applicants contend that a United State subpoena is necessary to produce the requested evidence and that the Application "does not circumvent any evidence-gathering restriction under Brazilian law." Dkt. No. 23 at 14–17 (quoting Dkt. No. 4 ¶ 47).

### A.    Whether the Person from Whom Discovery is Sought is a Participant

The Supreme Court has stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel* 542 U.S. at 264.

Applicants argue that this factor weighs in their favor because "the Clearing House and Morgan Stanley are not participants to the Foreign Proceedings." Dkt. No. 23 at 14. Intervenors contend that because the documents sought are "the personal banking records of the Mazza Group members," which are within the control of the participants in the Brazilian Proceedings, the Brazilian courts would have the power to order the evidence to be produced and that, as a result, this Court in its discretion should not order the production of the records. Dkt. No. 18 at 13–15.

The Second Circuit has held that in evaluating this factor, the issue is not the formal respondent but "the real party from whom the documents are sought." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). The factor looks to substance and not form. A Section 1782 applicant does not strengthen its application when it seeks documents nominally from a third party when those documents are, in fact, under the control of a party. Therefore, the court has held that when a subpoena seeks documents from United States counsel of a party in the foreign proceeding, the factor weighs against the applicant because she is "for all intents and purposes" seeking discovery from her opponent in the litigation. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004); *see Kiobel*, 895 F.3d at 245; *see also In re Microsoft Corp.,* 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (suggesting that the relevant question is whether the documents are "within the . . . reach" of the foreign tribunal);

*Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (focusing on the fact that the applicant "could obtain these documents in the English Proceedings").

Here, the parties seek discovery not from Intervenors' United States counsel but, in the case of Morgan Stanley, from Intervenors' United States bank. Intervenors argue the same logic applies, relying heavily on Judge Engelmayer's decision in *In re Saul Klein*, 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023). *Saul Klein* held that the first *Intel* factor weighs against granting a subpoena against a United States bank seeking the records of participants in the foreign proceeding. *Id.* As noted in that decision, the participants in the foreign proceeding would presumably have access to their own bank records. *Id.* at *11. Therefore, these records are within the reach of the foreign tribunal and are not "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Like litigation records, bank account records are held by a separate entity but also belong to and are under the control of the client. Therefore, *Saul Klein* held that the principle stated by the Second Circuit in *Kiobel* applies equally to bank records and weighs against granting the subpoena. 895 F.3d at 245.

Applicants argue that *Saul Klein* is contrary to the weight of authority in this district. Dkt. No. 23 at 15–16 & n.6. Some cases cited by applicants simply state without analysis that the bank is not a party to the foreign proceeding. *See In re Ernesto Andrade Grp.*, 2024 WL 195568 at *2 (S.D.N.Y. Jan. 18, 2024); *In re Inv. Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021). Other cases suggest that *Kiobel* may not apply because parties "may not have the same records—or the same quality of records—as the Banks," *In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018); *see In re Iraq Telecom Ltd., No.*, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019). Those decisions do not undermine the central insight of *Saul Klein*—that there is no reason to privilege documents held by a United States law firm over

documents held by a United States bank.  In both cases, everything else being equal, if the applicant can obtain the records from the party to the foreign proceeding, it should obtain them from that party.

Applicants argue that *Kiobel* should be limited to "the particularly sensitive context of subpoenas to a party's attorneys."  Dkt. No. 23 at 1; *accord In re Application of Lake Holding & Fin. S.A.*, 2021 WL 2581427, at *17 (S.D.N.Y. June 23, 2021).  The Second Circuit has rejected that proposition.  In *Frasers Group*, the court held that the first *Intel* factor weighed against a Section 1782 request to a United States resident who was a bank executive where the same documents would be in possession of the bank which was a party to the foreign proceeding.  95 F.4th at 58–59.  The court noted that it had "on multiple occasions found that the first *Intel* factor weighed against relief even where the discovery target was not a party to the foreign proceeding."  *Id.* at 59.  It held that the bank was the "real party from whom documents [were] sought," and that because there was no indication that the documents are "unobtainable absent § 1782 aid," the first *Intel* factor weighed against the Section 1782 request.  *Id.* at 59 (quoting *Kiobel*, 895 F.3d at 245 and *Intel*, 542 U.S. at 264).[8]

Here, Applicants do not dispute that the vast majority of the information sought from Morgan Stanley is the same as could be obtained from Malandrini Mazza and her sons in

---

[8] At argument, Applicants also suggested that *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), may cast doubt on the logic of *Saul Klein*.  In holding that the district court did not abuse its discretion in its application of the *Intel* factors, the *del Valle Ruiz* court did state that the first factor weighed in favor of discovery because the discovery target "is not a party to any of the foreign proceedings."  *Id.* at 534.  But the court did not address the question whether the first *Intel* factor would be satisfied if the real target of discovery was a party and the requested documents were within the jurisdiction of the foreign court.  The Second Circuit's subsequent decision in *Frasers Group* makes clear that in evaluating the first *Intel* factor the district court is not to consider only the nominal target of discovery, but also the real party from whom documents are sought.

Brazilian court. The subpoena requests items such as "account records and account statements," "detailed checking account information (account number, account balance, date of opening and closure of account)," "financial statements," and "transaction histories," all of which can be accessed by the average individual through an online banking account. Dkt. No. 2-1 at 18–19. Even assuming, speculatively, that Malandrini Mazza and sons will produce lower-quality records than Morgan Stanley, this goes to their compliance with discovery not whether a Brazilian court may order them to produce the materials.[9] The logic of *Kiobel*, *Frasers Group*, and *Intel* strongly suggests that as to the banking records, Malandrini Mazza and her sons should be regarded as "the real part[ies] from whom the documents are sought." *Kiobel*, 895 F.3d at 245; *see Intel*, 542 U.S. at 264.

The first factor weighs in favor of Intervenors, at least as to the records held by Morgan Stanley.

### B.    Receptivity of the Foreign Tribunal

The second discretionary factor is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. As noted by Applicants, there is no indication Brazilian courts are generally unreceptive to Section 1782 discovery. *See In re Banco Santander (Brasil) S.A.*, 2022 WL 1546663, *2 (S.D.N.Y. Apr. 6,

---

[9] Applicants are correct that a party need not seek discovery in the foreign proceeding before requesting it pursuant to Section 1782. Dkt. No. 23 at 15; *see Metallgesellschaft*, 121 F.3d at 79. However, this is a separate issue from whether, in exercising its discretion, the Court should consider the Applicants' ability to obtain the documents from the parties in the foreign proceeding. *See Frasers Grp.,* 95 F.4th at 58 ("Contrary to Frasers's assertions, the district court did not impose an exhaustion requirement on Frasers. Although the district court considered the availability of the documents in the English Proceedings, it did not treat Frasers's failure to first pursue discovery of these documents in the English Proceedings as a categorical bar.").

2022); *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020);

Dkt. No. 4 ¶ 48.

Intervenors argue that a Brazilian court will not be receptive to the requested information

because the decision in the *produção* denied a similar request. Dkt. No. 18 at 16; Dkt. No. 19-5.

That decision does not necessarily demonstrate that the Brazilian court would be unreceptive to

documents produced pursuant to the Section 1782 request. "A foreign nation may limit

discovery within its domain for reasons peculiar to its own legal practices, culture, or

traditions—reasons that do not necessarily signal objection to aid from United States federal

courts." *Intel*, 542 U.S. at 261. Intervenors have not produced any "authoritative declaration"

suggesting the information sought here would not be welcome in the Brazilian Proceedings.

*Euromepa*, 51 F.3d at 1101; *cf. Schmitz*, 376 F.3d at 84 (denying discovery when the court was

"faced with specific requests from the German Ministry of Justice and the Bonn Prosecutor to

deny petitioners the discovery they sought").

At the same time, Applicants produce no particular evidence showing the discovery

would be welcomed. *Cf. In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct

Discovery for Use in Foreign Proc.*, 773 F.3d 456, 461 (2d Cir. 2014) (granting discovery when

Swiss magistrate stated in a letter that the documents would be "of great usefulness" to his

inquiry); *In re Banco Sistema S.A.*, 2023 WL 5210973, at *2 (S.D.N.Y. Aug. 14, 2023) (granting

discovery when a Brazilian court order suggested that applicants should "pursue seizure of

[f]oreign [d]efendants' assets abroad"). Applicants' counsel states that while in his experience

"Brazilian courts have permitted the introduction of evidence gathered through § 1782

applications," Brazilian courts may reject such evidence if its introduction is perceived as

"oppressive or abusive." Dkt. No. 4 ¶ 48.

The second *Intel* factor weighs mildly in favor of Applicants.

### C. Circumvention of Foreign Proof-Gathering Restrictions

The third factor is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.

Although Section 1782 "does not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court,'" it does "allow consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application." *Mees*, 793 F.3d at 303 (quoting *Metallgesellschaft*, 121 F.3d at 79). Thus, the discovery policies of the foreign forum may be considered in the discretionary analysis, though they "should not be afforded undue weight." *Id.* In particular, the Second Circuit distinguishes between rules of the foreign jurisdiction that "*prohibit* the acquisition or use of certain materials," and rules that merely "*fail to facilitate* investigation of claims." *Id.* at 303 n.20. The United States is unusual in the breadth of pretrial discovery permitted. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("Discovery in the federal court system is far broader than in most (maybe all) foreign countries."). "Most civil-law systems lack procedures analogous to the pretrial discovery regime operative under the Federal Rules of Civil Procedure." *Intel*, 542 U.S. at 261 n.12. That alone does not "signal objection to aid from U.S. federal courts." *Id.* at 261. However, where the rules of a foreign jurisdiction prohibit the acquisition or use of a certain type of material, the interests of comity that Section 1782 is intended to serve suggest that the United States court as well should honor those prohibitions and decline to order discovery.

Here, Intervenors argue that the request is an attempt to circumvent the Brazilian ruling in the *produção,* Brazilian constitutional and statutory law protecting banking secrecy, and the

forum-selection clause in the contract between the parties.  Dkt. No. 18 at 16–18.  Applicants

argue that Section 1782 is generally consistent with Brazilian discovery requirements, that the

*produção* ruled on a materially different issue, and that the forum-selection clause has "little to

no weight."  Dkt. No. 23 at 17–19.

The court's ruling in the *produção* does not directly support Intervenors' argument with

respect to the third *Intel* factor.  The request made by Applicants in the *produção* focused on

transactions around 2007 between Malandrini Mazza, her sons, and a company not named in this

litigation.  Dkt. No. 19-5 ¶¶ 3, 6.  In addition, the legal standard for the *produção* requires a party

to prove the need for *early* production of evidence, suggesting that it may be a higher or different

standard than the standard applicable to normal discovery.  Dkt. No. 19 ¶ 19–31; Dkt. No. 19-5 ¶

9 (analyzing, among other factors, whether the discovery is necessary because "the verification

of certain facts may become impossible or very difficult during the course of the action").

Applicants frame their requests here based on transactions from July 2021 forward.  The

*produção* decision alone does not support that granting the request here would permit Applicants

impermissibly to circumvent foreign proof-gathering restrictions.

However, Intervenors offer the unrebutted evidence that Brazilian constitutional and

statutory law establishes a right to the privacy of banking documents, and Brazilian courts

generally do not order the release of such documents except on a showing of crime or fraud.

Dkt. No. 19 ¶¶ 80–85; Dkt. Nos. 19-10, 19-11; *see* Dkt. No. 23 at 19–20.  As described by

Intervenors, the Brazilian rules are akin to rules that prohibit the acquisition or use of certain

materials.  In form, they are similar to the protections that the United States accords to

information such as tax return information, *see Sec. & Exch. Comm'n v. Rayat,* 2023 WL

1861498, at *3 (S.D.N.Y. Feb. 9, 2023), and attorney work product, *see Upjohn Co. v. United*

*States*, 449 U.S. 383, 299–401 (1981).  A heightened need must be shown for the production of

such records.

This factor weighs slightly in favor of Intervenors with respect to the Morgan Stanley

documents.[10]

### D.    Unduly Intrusive or Burdensome

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." *Intel*,

542 U.S. at 265.  "[A] district court evaluating a § 1782 discovery request should assess whether

the discovery sought is overbroad or unduly burdensome by applying the familiar standards of

Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302.  Rule 26 states that

material should be "proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit."

A court has a "responsibility to consider the proportionality of discovery" under Rule 26.

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021)

(quoting Fed. R. Civ. P. 26(b), Advisory Committee Note to 2015 amendment); *see Barbara v.*

---

[10] The Court places no weight on the forum-selection clause in the Contract in reaching this conclusion.  Some courts in this District have recognized that a forum-selection clause "can weigh against the granting of an application brought under section 1782."  *In re Alghanim*, WL 1423088, at *4 (S.D.N.Y. May 5, 2022) (collecting cases).  However, one of the aspects of the law chosen by the parties may be its receptivity to the use of foreign discovery.  *See In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia,* 2024 WL 555780, at *13 (S.D.N.Y. Jan. 18, 2024) ("Thus, assuming that [the parties] "signed up" for English rules governing discovery, part of what they "signed up" for was their own—and their adversary's—ability to seek discovery from nonparty U.S. witnesses pursuant to Section 1782.") *report and recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024).  Here, the forum selection clause in the Contract states that any disputes arising from "this commitment" shall be governed by Brazilian law.  Dkt. No. 24-4 ¶ 10; Dkt. No. 24 ¶ 24.  The language of this clause does not clearly speak to discovery or show intent to be bound only by Brazilian evidentiary law.

*CVS Albany L.L.C.*, 2024 WL 3581237, at \*2 (E.D.N.Y. July 30, 2024) ("Proportionality goes hand-in-hand with relevance. That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate." (internal citations and quotation marks omitted)).

Relatedly, a court under Section 1782 may consider whether a request is properly characterized as a "fishing expedition." *See Certain Funds,* 2014 WL 3404955, at \*6; *China Constr. Bank*, 2023 WL 3791711, at \*2; *Jiangsu Steamship*, 2015 WL 3439220, at \*5; *Harbour Victoria*, 2015 WL 4040420, at \*8.[11] A request to search through a variety of private documents without reason to believe that many or any of them will turn up relevant material is likely to be overbroad and disproportionate to the needs of the case, and presents "concern for abuse" of the discovery process. *Harbour Victoria*, 2015 WL 4040420, at \*7.

The evidence before the Court suggests that Applicants are engaged in a fishing expedition. The court in Brazil rejected Applicants' request for discovery in the *produção*. It did so on the basis that Applicants were engaged in a fishing expedition and that any evidence that Applicants obtained would not be likely to be relevant. Dkt. No. 19-5 ¶¶ 5–10. Although

---

[11] These decisions consider the speculative nature of a party's request at different places in the *Intel* analysis. In some instances, the characterization of a party's demand as a "fishing expedition" may speak to whether there is a proceeding within reasonable contemplation. *See Certain Funds,* 2014 WL 3404955, at \*6; *Jiangsu Steamship*, 2015 WL 3439220, at \*5. In others, an applicant may be seeking to circumvent other applicable proof-gathering restrictions by fishing for evidence via Section 1782. *See Harbour Victoria*, 2015 WL 4040420, at \*8. Here, the fact that defendants request intrusive discovery without a basis to believe it will uncover relevant information could be considered a circumvention of Brazilian discovery rules which weigh against such discovery, discussed *supra*. However, it is also true that regardless of Brazilian discovery rules, considerations of proportionality and prevention of abuse embodied in Rule 26 would weigh against granting the request. Given that "the *Intel* factors are not to be applied mechanically," and "a district court should also take into account any other pertinent issues arising from the facts of the particular dispute," the general relevance of this consideration to the discretionary analysis is more important than its precise categorization. *Kiobel*, 895 F.3d at 245.

Applicants seek in the *protesto* what is, in essence, a declaration putting others on notice that the sons would be responsible for any debts that Malandrini Mazza has to them if those debts are reduced to a judgment, they have not provided any evidence or coherent reasoning suggesting Malandrini Mazza and her sons engaged in asset concealment between 2021 and the present— the dates covered by the subpoena.  Thus, while Applicants' request technically satisfies the "for use" standard in that the request would result in the production of documents that—if they exist—would be minimally relevant to the question presented in the *protesto*, they have provided no basis, beyond conclusory assertions, to believe this evidence exists or can be found in the requested records.  *Cf. China Constr. Bank*, 2023 WL 3791711, at *2 (no fishing expedition when applicant "provided a solid factual basis for its belief that Zhang has significant assets in Italy").

At the same time, even narrowed to transactions just between Malandrini Mazza and her sons, the request is remarkably overbroad and intrusive on the privacy interests of the Intervenors.  As framed, the request calls for a vast amount of information about Malandrini Mazza and her sons that has no apparent relevance to the *protesto*, including information about all of her banking activities and transfers in and out of her accounts.  Because Applicants are unable to provide any detail regarding what suspicious activity they believe has occurred, there is also no way for the court to tailor the overbroad request.

The request, if granted, would lead to abuse, contrary to the comity interests Section 1782 was intended to serve.  As presented to the Court, the *protesto* is a mere preliminary proceeding to the actual liability determination in the *execução* and *incidente*.  No showing need be made that the subject of the *protesto* has done any wrong to the plaintiffs or that the third parties named in the *protesto* have, in fact, engaged in financial transactions with the subject.  Thus,

Applicants are seeking evidence in a proceeding for which they have no evidence, and on the basis that they have no evidence, and are doing so against the backdrop of a letter they submitted in which they claim that they need no evidence. Although Applicants here happen to be seeking information from Malandrini Mazza's adult sons, the argument that Applicants make in support of their Section 1782 application is not susceptible to any limiting principle based on family relationship. At argument, the Court inquired whether Applicants' argument would permit a Brazilian plaintiff to name in the *protesto* anyone about whom it wanted financial information without any supporting evidence and then to use the *protesto* and the absence of evidence that it had to support the *protesto* to make a broad-ranging request for discovery in the United States.. Oral Argument Tr. 17–18. Applicants were not able to provide a satisfactory answer.

When discovery is nominally for use in one proceeding but evidence suggests it is in fact for use in another proceeding for which it should not be granted under Section 1782, this can weigh against granting the petition. *Harbour Victoria*, 2015 WL 4040420, at *8; *see Accent Delight*, 869 F.3d at 135; *cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.")

Here, the minimal relevance of the evidence to the *protesto* is outweighed by the intrusive nature of the evidence and the appearance that its proposed use in the *protesto* is cover for a fishing expedition to investigate other possible or speculative uses of the discovery. *See Harbour Victoria*, 2015 WL 4040420, at *8; *Jiangsu Steamship*, 2015 WL 3439220, at *5.

E.    **Summary**

Taken together, the discretionary factors counsel in favor of granting Intervenors' motion to vacate the subpoena issued to Morgan Stanley.  The information Applicants seek regarding Malandrini Mazza and her sons' financial transactions is within the control of the parties in the Brazilian Proceedings.  Applicants' decision to seek the information here rather than in those proceedings appears to be an attempt to circumvent Brazilian laws restricting access to banking information and an unfavorable discovery ruling in Brazilian court.  As with the request in Brazilian court, this request appears designed primarily as a fishing expedition to acquire sensitive information for proceedings where its use is only speculative at this time.  Applicants may file a new application seeking information from Morgan Stanley if circumstances change. *See MT Baltic Soul*, 2015 WL 5824505, at *2.

III.    **Clearing House Documents**

Applicants state that Clearing House produced the responsive documents on June 7, 2024, and therefore argue that the motion to quash is moot as to Clearing House.  Dkt. No. 25 ¶ 10; Dkt. No. 23 at 21–22.  However, "subpoena compliance does not necessarily moot an appeal of an order enforcing a subpoena." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022).  When movants "have and maintain a privacy interest in the documents that they produced," they are "entitled to the return of those documents if successful" on a motion to quash. *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020); *see KGK Jewelry LLC v. ESDNetwork,* 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) ("Information regarding a party's financial records may give rise to a privacy interest.").  In that instance, the violation of which the movant complains is continuing and the Court "is positioned to grant meaningful relief by ordering that the documents be returned or destroyed." *Mangouras*, 980 F.3d at 96.

Here, though Intervenors note that the motion is not moot as to the Clearing House, they do not identify a privacy interest in the Clearing House documents.  *See* Dkt. No. 26 at 14. When given an opportunity to do so at oral argument, Intervenors suggested generally that financial records can reveal sensitive information.  Oral Argument Tr. 33–34.  However, it is not obvious that the Clearing House documents, which are simple records of wire transfers, are private or sensitive.  *Cf. GEOMC Co. v. Calmare Therapeutics, Inc.*, 2020 WL 6375562, at *6 (D. Conn. Oct. 30, 2020) (noting that not all financial documents "expressly implicate" privacy concerns).  Intervenors are unable to articulate any particularized privacy interest in these documents, as opposed to in financial documents generally.  This is true even though Intervenors possess the documents, as stated by Applicants and not disputed by Intervenors at oral argument. Oral Argument Tr. 34.  Therefore, the Court declines to order the return or destruction of the Clearing House documents.

## CONCLUSION

The motion to vacate and quash subpoenas is GRANTED as to the subpoena against Morgan Stanley and DENIED as to the subpoena against the Clearing House.

The Clerk of Court is respectfully directed to close Dkt. No. 17.

SO ORDERED.

Dated: September 12, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge

34